**RESERVE LIFE INSURANCE COMPANY**

v.

**The UNITED STATES.**

No. 8–75.

United States Court of Claims.

Jan. 14, 1981.
As Modified March 6 and March 10, 1981.

Vester T. Hughes, Jr., Dallas, Tex., attorney of record, for plaintiff; W. John Glancy, Douglas C. Bunch, and Hughes & Hill, Dallas, Tex., of counsel.

Robert C. Markham, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser and Michael J. Dennis, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and KUNZIG and BENNETT, Judges.

OPINION

FRIEDMAN, Chief Judge:

This case, before us on the defendant's exceptions to the recommended decision of Senior Trial Judge White, presents a

narrow statutory question under the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. §§ 801–20 (1976). Section 818(c)(2) of the Code[1] permits a life insurance company to recompute in a specified way the amount of its reserves for federal income tax purposes. The question is whether a company that makes that recomputation also is required to recompute its assets and gross premium income to reflect the recomputation of its reserves. The trial judge held that the company is not required to make that further recomputation. We agree and therefore hold for the plaintiff.

## I.

A. The Life Insurance Income Tax Act of 1959 provided a complicated series of multiple computations to determine an insurance company's tax base, to which ordinary corporate tax rates apply. *Jefferson Standard Life Insurance Co. v. United States*, 408 F.2d 842, 844–46 (4th Cir.), *cert. denied*, 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969).

> In recognition that a part of the premiums charged, and a part of the income derived from investments, will be repaid to policyholders at a future date, in satisfaction of a contractual obligation, the Act purports to tax only the portions of premium income and investment income which represent profit to the company, available legally for distribution to policyholders or stockholders as dividends, as distinguished from those gains which, under state law, must be set aside to meet the company's future contractual obligations.

*Id.* 844. Although the statutory computations are intricate, there is no need to explain or probe those complexities in the present case.

The "gross premium" is the amount charged a life insurance policyholder. It comprises two elements: "net valuation premium" and "loading." The "net valuation premium" is the portion of the gross premium that represents the amount required to pay the benefits under the policy. The "loading" portion of the gross premium covers deductible expenses such as overhead, salesmen's commissions, and state taxes.

"Under the 1959 Act the undivided part of a life insurance company's assets represented by its reserves is considered as a fund held for the benefit of the policyholders." *United States v. Atlas Life Insurance Co.*, 381 U.S. 233, 239, 85 S.Ct. 1379, 1383, 14 L.Ed.2d 358 (1969). The "reserves" reflect a life insurance company's benefit obligations to its policyholders. They are not trust funds or held in escrow, but are shown on the company's books as liabilities, which state law requires. Three elements determine the amount of such reserves: (1) the policyholders' life expectancies based upon mortality tables, (2) the interest rate by which the face amount of the policy is discounted to determine its present value, and (3) the method used to compute reserves.

Life insurance companies use two methods in computing reserves: (1) the "net level premium method" assumes that the net valuation premium is uniform throughout the term of the policy. (2) The "preliminary term method" reflects the greater expenses during the first year of a policy,[2] by using a smaller first year net valuation premium and larger uniform net valuation premiums in subsequent years.[3]

B. In a growing company, reserves would be greater if valued under the net level method. The preliminary term method makes more funds available in the first year to enable the company to pay the

---

**1.** All statutory references are to the Internal Revenue Code of 1954, as amended.

**2.** This greater cost in the first year is primarily attributable to the agent's commissions, initial underwriting, and issue costs. Files, *Policy and Claim Reserve Liabilities*, in Life Insurance Accounting 89, 95 (R. Strain, ed. 1977).

**3.** A company's reserves, computed on a net level basis, equals both (1) the present value of the policies' future benefits minus the present value of future net valuation premiums and (2) the accumulated value of the past net valuation premiums minus the accumulated value of past benefits. *Id.* 92.

larger, initial expenses.[4] All other things being equal, the net level method of computing reserves results in a lower tax liability.

In order to alleviate this tax inequality,[5] section 818(c) permits a taxpayer that computes its reserves on a preliminary term basis to recompute them for tax purposes on a net level basis by either of two methods. *See* pp. 371–373, *infra*.

Although life insurance premiums typically are calculated and quoted on an annual basis, payments generally are made in installments (*i. e.*, monthly, quarterly, or semi-annually). The policyholder is not legally obligated to pay an installment; the policy ordinarily will lapse after a grace period following the missing installment. "Deferred premiums" are installments due after the end of the insurance company's tax year on December 31 and before the policy's anniversary (renewal) date. "Uncollected premiums" are premiums on life insurance policies that are still in effect but are overdue at the end of the tax year. Together, deferred and uncollected premiums comprise "unpaid premiums." With regard to the accounting procedures for unpaid premiums, the Supreme Court has stated:

> Under normal accounting rules, unpaid premiums would simply be ignored. They would not be properly accruable since the company has no legal right to collect them. Nevertheless, for the past century, insurance companies have added an amount equal to the net valuation portion of unpaid premiums to their reserves, with an offsetting addition to assets. State law uniformly requires this

treatment of unpaid premiums, as does the accounting form issued by the National Association of Insurance Commissioners (NAIC). This national organization of state regulatory officials, which acts on behalf of the various state insurance departments, performs audits on insurance companies like respondent which do business in many States. The NAIC accounting form, known in the industry as the "Annual Statement," is used by respondent for its financial reporting. In effect, in calculating its reserves, the company must treat these premiums to some extent as if they had been paid.

*Commissioner v. Standard Life & Accident Insurance Co.*, 433 U.S. 148, 150, 97 S.Ct. 2523, 2525, 53 L.Ed.2d 653 (1977).

Plaintiff Reserve Life, which values a significant portion of its reserves on a preliminary term basis, elected for its 1969 tax year to revalue upwardly its reserves under section 818(c)(2) to an approximation of the net level premium method, and reported its taxable income for that year on that method. The actual use of the net level premium method for valuing reserves would have resulted in decreased loading because the net level premium method does not assume a smaller net valuation premium during the first year of the policy. Because the loading portion of unpaid premiums is excluded from assets and gross premium income, *see* p. 371 *infra*, this revaluation would result in increased assets and gross premium income. Reserve Life, however, did not revalue these items to reflect its section 818(c)(2) election. Had it done so, its tax liability would have been increased.

> This drain would have a more profound effect upon relatively small and young companies, whereas older and more well established companies would normally have larger amounts of surplus and thereby could more easily support this surplus drain.
>
> *Id.* 95.

---

**4.** The problem is described as follows:

The net level reserve method assumes that the loading within the premium for expenses is level, and therefore the expenses are level. What then happens is that the insurance company will not have enough funds left from the first year's gross premium after first-year expenses are deducted from the premium in order to set up the net level reserve. This causes a drain on surplus, which could have an adverse effect upon insurance companies whose surplus is not large. (Surplus is defined in this context as the assets minus the liabilities.)

**5.** S.Rep. No. 291, 86th Cong., 1st Sess. 30–31, 73–74, *reprinted in* [1959] U.S.Code Cong. & Ad.News, pp. 1575, 1605–06, 1649–50 ["Senate Report"]; H.R. Rep. No. 34, 86th Cong., 1st Sess. 17–18, 42–43 (1959) ["House Report"].

The Commissioner concluded that Reserve Life was required to make those further adjustments and assessed a deficiency reflecting them. The company paid the deficiency and filed suit in this court to recover that amount.

The trial judge held for the plaintiff. He pointed out that the language of section 818(c) only refers to a "recomputation for income tax purposes" of reserves "and does not state, either expressly or by clear implication, that a life insurance company which accepts the benefit of such a recomputation must also go further and recompute for tax purposes the net valuation premium portion and the loading portion of the company's unpaid premiums, as shown on its Annual Statement." He concluded that the legislative history of that section supports that interpretation. Trial Judge White stated that the Supreme Court indicated in *Commissioner v. Standard Life & Accident Insurance Co., supra,* that the accounting system approved by the National Association of Insurance Commissioners (NAIC) "provides guidance for courts in considering problems that relate to the income taxation of insurance companies." The trial judge concluded that

> it would require a stronger showing of necessity than is present in this case to justify a court in holding that the Annual Statement allocation of unpaid premiums as between the net valuation premium portion and the loading portion must be changed for income tax purposes merely because an insurance company has exercised its statutory privilege by revaluing preliminary term reserves for income tax purposes.

## II.

The issue in the present case stems from the Supreme Court's decision in *Standard Life.* In that case the question was the extent to which unpaid premiums should be included in reserves, assets, and gross premium income. The Court held that the net valuation portion of unpaid premiums, but not the loading portion, is includable in these three categories.

Prior to that decision, the problem in the present case would not have arisen, since unpaid premiums were included in full in reserves, assets, and gross premium income. *Western and Southern Life Insurance Co. v. Commissioner,* 460 F.2d 8 (6th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972); *Western National Life Insurance Co. of Texas v. Commissioner,* 432 F.2d 298 (5th Cir. 1970); *Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842 (4th Cir.), *cert. denied,* 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); *Franklin Life Insurance Co. v. United States,* 399 F.2d 757 (7th Cir. 1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969). Consequently, no distinction was drawn between the net valuation and the loading portion of premiums for tax purposes. The fact that an insurance company elected under section 818(c) to recompute its reserves from a preliminary term to a net level premium basis and thereby increase the amount of reserves in the year of recalculation would not have affected the total amount of its assets or gross premium income. As a result of *Standard Life,* however, the loading element of unpaid premiums is now excluded from assets and gross premium income.

The issue in this case, therefore, is whether the company's recalculation of reserves under section 818(c) also requires a corresponding recalculation of assets and gross premium income to reflect that change in reserves. This is an issue which Congress did not address in the Life Insurance Company Income Tax Act of 1959 since at the time it enacted that legislation, almost 20 years before *Standard Life,* the problem had not yet arisen.

## III.

Section 818(c) provides as follows:

(c) Life Insurance Reserves Computed on Preliminary Term Basis.—For purposes of this part (other than section 801), at the election of the taxpayer the amount taken into account as life insurance reserves with respect to contracts for which such reserves are computed on

a preliminary term basis may be determined on either of the following bases:

(1) Exact revaluation.—As if the reserves for all such contracts had been computed on a net level premium basis (using the same mortality assumptions and interest rates for both the preliminary term basis and the net level premium basis).

(2) Approximate revaluation.—The amount computed without regard to this subsection—

(A) increased by $21 per $1,000 of insurance in force (other than term insurance) under such contracts, less 2.1 percent of reserves under such contracts, and

(B) increased by $5 per $1,000 of term insurance in force under such contracts which at the time of issuance cover a period of more than 15 years, less 0.5 percent of reserves under such contracts.

If the taxpayer makes an election under either paragraph (1) or (2) for any taxable year, the basis adopted shall be adhered to in making the computations under this part (other than section 801) for the taxable year and all subsequent taxable years unless a change in the basis of computing such reserves is approved by the Secretary, except that if, pursuant to an election made for a taxable year beginning in 1958, the basis adopted is the basis provided in paragraph (2), the taxpayer may adopt the basis provided by paragraph (1) for its first taxable year beginning after 1958.

This provision refers only to the recomputation of reserves. It does not mention or suggest any corresponding recomputation of assets or gross premium income. It permits an insurance company to redetermine "the amount taken into account as life insurance reserves with respect to contracts for which such reserves" have been computed on a preliminary term basis. In other words, reserves computed on a preliminary term basis may be recomputed on a net level premium basis by making (1) an exact revaluation of the reserves on the new basis or (2) an approximate revaluation resulting from increasing the existing reserves (which were calculated on a preliminary term basis) by the statutory formula.

There is nothing in the language or design of this provision that requires, or even implies, that a corresponding recalculation must be made of assets and gross premium income by eliminating from those items the portion of the unpaid premiums attributable to increase in reserves and theoretical increase in the net valuation premium or reduction in loading. Cf. *United States v. Consumer Life Insurance Co.*, 430 U.S. 725, 741, 97 S.Ct. 1440, 1449, 52 L.Ed.2d 4 (1977).

The legislative history of the 1959 Act supports and confirms this view of the narrow purpose and effect of section 818(c). The Senate Committee Report on the provision stated:

Some life insurance companies compute their life insurance reserves on what is called a preliminary term basis. The effect of this is to take the full agents' commissions (which are larger in the initial period of a life insurance contract) out of amounts which would otherwise be added to reserves during the first year of a contract and to add correspondingly larger amounts to reserves in later years. The effect of this is to work a hardship on insurance companies using preliminary term reserves as compared with those which use ordinary reserves, since the policy and other contract liability requirements which determine the policyholders' and life insurance company's shares of investment income depend on the size of the reserves. Moreover, premium additions to reserves, deductible under phase 2, also would in some cases be smaller. To avoid this result, life insurance companies which have computed their reserves on a *preliminary* term basis are permitted to recompute their reserves on a net level premium basis. This can be done either by an exact revaluation of the reserves to a net level premium basis or by approximating this result under a formula set forth in the bill.

Senate Report, *supra* note 5, at 30–31, [1959] U.S.Code Cong. & Ad.News at 1605–06. The House Committee Report contains almost identical language. House Report, *supra* note 5, at 17–18.[6]

Like the statute itself, the Senate and House Committee Reports focused solely upon the need to permit life insurance companies "which have computed their reserves on a preliminary term basis . . . to recompute their reserves on a net level premium basis." The "hardship on insurance companies using preliminary term reserves as compared with those which use ordinary reserves,"—which hardship section 818(c) was designed "to avoid"—was twofold: (1) "the policy and other contract liability requirements which determine the policyholders' and life insurance company's shares of investment income depend on the size of the reserves"; and (2) "premium additions to reserves, deductible under phase 2 [one of the steps in determining a life insurance company's taxable income], also would in some cases be smaller."

The remedy Congress provided to enable life insurance companies to avoid this "hardship" was to permit them to recompute their reserves. The recomputation of reserves was the sole purpose of and method permitted by this provision. That is all it deals with. There is nothing in the legislative history of this provision that reflects any congressional intention to require life insurance companies that elect to redetermine their reserves also to redetermine their assets and gross premium income. Indeed, as we have noted (*supra*, p. 371), the issue of possible redetermination of assets and gross premium income did not arise until many years after the statute was enacted.

If the effect of an insurance company's recalculation of its reserves without also recalculating its assets and gross premium income would be not only to eliminate the "hardship" of that company in comparison with other companies that calculate their reserves on a net level premium method, but further to give the recalculating company an advantage over those other companies, that would be an important consideration in support of the government's position. The parties disagree, however, over that issue. The government contends that the failure of an insurance company also to recalculate assets and gross premium income would give the company such an advantage. The plaintiff denies this, arguing that whether a redetermination of reserves gives an insurance company an advantage over companies that determine their reserves on a net level premium method depends upon the particular situation of the individual company and cannot be determined categorically for all companies.

On this record we cannot determine which position is sound. We therefore cannot conclude that the plaintiff's failure to redetermine its assets and gross premium income is inconsistent with or would be a departure from the basic purpose of section 818(c) of permitting a recomputation of reserves to avoid "hardship" to the redetermining company.

## IV.

The government contends, however, that two other provisions of the 1959 Act compel a different result.

A. The government relies primarily, as does the dissent, upon section 818(a). Insofar as here pertinent, that section requires that "[e]xcept as provided in the preceding sentence [requiring that computations be made under an accrual method of accounting], all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners."[7]

**6.** The only differences are that the House Report does not contain the words "requirements which determine the policyholders' and life insurance company's shares of investment income" in the third sentence of the passage quoted in the text and the word "premium" (before the word "additions") in the next sentence, and uses the singular rather than the plural of "depend" in the prior sentence.

**7.** Similarly, the applicable regulation provides:

The government points out that an insurance company that values its reserves on a net level premium basis, either initially or as a result of a change in the method of valuation, also would be required for Annual Statement purposes to value its assets and gross premium income by the same method. The government contends that section 818(a) requires the same recalculation of assets and gross premium income when an insurance company elects to recompute its reserves for federal income tax purposes under section 818(c), since section 818(a) requires that "all such computations [those "entering into the determination of the taxes imposed by this part"]" be made consistently with the NAIC statement. The government points to the Supreme Court's statement in *Standard Life* that section 818(a) "establishes a preference for NAIC accounting methods" (433 U.S. at 161, 97 S.Ct. at 2530) and "requires deference in this case to the established accounting procedures of the NAIC." *Id.* 151, 97 S.Ct. at 2525. In effect, the government repeats, although in a different context, the argument it made and the Court rejected in *Standard Life* that "unpaid premiums should be consistently treated in calculating 'assets,' and 'gross premium income,' as well as 'reserves.'" *Id.* 154, 97 S.Ct. 2527.

Although the argument is superficially plausible, it does not withstand penetrating analysis.

1. Section 818(a), the legislative history of that section, and the Commissioner's implementing regulations all state that the NAIC rules are to be followed for tax purposes only to the extent that they are not inconsistent with the accrual method of accounting or the Internal Revenue Code. Treas.Reg. § 1.818–2(a)(2) (1961); Senate Report, *supra* note 5, at 72–73, [1959] U.S. Code Cong. & Ad.News at 1648–49. *See generally* Harman, *The Pattern of Life Insurance Company Taxation Under the 1959 Act*, [16th Annual] Tul.Tax Inst. 686, 744–49 (1965). There are many inconsistencies between the NAIC and tax accounting rules, which produce different accounting treatment for the same items under the two systems.[8] In none of those situations, however, is a further accounting adjustment made for tax purposes to reflect a Code provision that requires or permits an accounting treatment for federal tax purposes that is different from that which the NAIC system mandates.

For example, interest on certain governmental obligations, which is exempt from federal taxation under section 103, is included in full in the Annual Statement in gross investment income but is excluded for tax purposes in the computation of an insurance company's taxable investment income and gain from operations.[9] Dividends received by a life insurance company are included in full for Annual Statement purposes while partially excluded under the dividends received deduction (I.R.C. §§ 243–45) for taxable investment income and gain from operations.[10] Assets used in carrying on an insurance business are included at their adjusted basis net of encumbrances in the Annual Statement but are excluded for tax purposes when computing earnings rates (I.R.C. § 805(b)(4)). For Annual Statement purposes, real estate and stock are generally included in assets at book value with an appropriate reduction for en-

---

To the extent not inconsistent with the provisions of the Internal Revenue Code of 1954 or the regulations thereunder and the method of accounting adopted by the taxpayer pursuant to this section, all computations entering into the determination of taxes imposed by part I shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners. Treas.Reg. § 1.818–2(a)(2) (1961).

8. *See* Ernst & Ernst, Federal Income Taxes— Life Insurance Companies 304–22 (1977).

9. Exempt interest income is, however, includable in investment yield for tax purposes. This affects the earnings rate, which in turn affects both the policyholders' share of taxable investment income and the policyholders' share of gain from operations.

10. The full amount of dividends received is included in investment yield for tax purposes. *See* note 9, *supra*.

cumbrances,[11] while under section 805(b)(4)(A) they must be included at fair market value without any reduction for encumbrances. There are numerous other examples.[12]

In none of these instances is a further adjustment made for federal tax purposes to reflect the differences between the treatment of an item under the Annual Statement and federal tax accounting principles and thereby to eliminate the inconsistencies between the two systems. To the contrary, for federal tax purposes only the specific different treatment that the Code requires or permits is given effect. The result is that inconsistencies do exist between the NAIC and the federal tax treatment of the same item.

Under ordinary accounting principles, a deduction from income—usually as an expense—would result in a reduction in the surplus account and either a reduction in assets for cash expended or an increase in liabilities for accounts payable. For tax purposes, however, the exclusion from life insurance company income of certain interest and dividend income neither affects the shareholders' surplus[13] nor results in any adjustment to assets or liabilities.[14] The exclusion for tax purposes of assets used in carrying on an insurance company's business, if reflected in the Annual Statement, might require an offsetting decrease to liabilities or shareholders' surplus. No corresponding reduction is made for tax purposes. Finally, the upward revaluation of real estate and stock so as to equal fair market value that section 805(b)(4)(A) requires, would, for Annual Statement purposes,[15] result in unrealized capital gain and an increase in the surplus account and "reconciliation of ledger accounts." For tax purposes, no corresponding adjustment is made[16] and the gain is not recognized.[17]

We think that the most persuasive explanation of these inconsistencies is that section 818(a) requires that the accounting treatment in the Annual Statement be followed for federal tax purposes unless the Code provides or permits a different treatment. Here section 818(c) permits a different treatment than the Annual Statement for reserves that under the Annual Statement are computed on the preliminary term method. In permitting an insurance company to redetermine those reserves on a net level premium method, the Code does not also require that the company's assets and gross premium income similarly be recomputed on that method, even though the consequence is to produce an inconsistency between the NAIC and the federal tax amounts for those two items.

Since section 818(c) does not mandate a further adjustment for federal tax purposes in the assets and gross premium income items, under section 818(a) these items are to be determined in accordance with their treatment under the Annual Statement.

11. NAIC procedures permit a life insurance company to write up the book value of an investment. This results in an increase in capital gains on investments, surplus account, and assets. *See* C. Beardsley, Life Company Annual Statement Handbook, p. 7–71 (1980).

12. *See* note 8, *supra.*

13. The Code defines shareholders' surplus to equal the prior year's shareholders' surplus plus life insurance taxable income, net capital gains, deductions for dividends received, and excluded interest minus distributions to shareholders. I.R.C. § 815(b). Consequently, a legislated inconsistency is present with regard to the surplus account; interest and dividends specifically excluded from income are explicitly included in shareholders' surplus. Thus, the Code would override the section 818(a) requirement of conformity with the NAIC Annual Statement.

14. It would be impossible to treat assets or liabilities consistently. The exclusion from income would require a corresponding adjustment to assets or liabilities; however, the inclusion of this exempt income in surplus would require that no adjustment be made to assets or liabilities.

15. *See* note 11, *supra.*

16. The Code-mandated definition of shareholders' surplus would override NAIC methods. *See* note 13, *supra.*

17. Capital gains, included in gain from operations in the tax return, require a sale before gain or loss can be recognized. I.R.C. § 1222.

That is precisely how Reserve Life treated them in its return.

2. In *Standard Life*, the company argued that "the assumption of prepayment [of unpaid premiums] [sh]ould be applied in calculating reserves, but ignored when calculating assets and income." 433 U.S. at 159, 97 S.Ct. at 2530. The Court, recognizing that there need not be perfect symmetry in the tax laws, concluded that "there should be a measure of consistency in the accounting treatment of an item affecting elements in a formula such as that used to calculate the policyholders' share of investment income." *Id.* 160, 97 S.Ct. 2530.

The policyholders' share of investment income referred to in *Standard Life* is calculated by a formula "which is essentially determined by the ratio of the company's reserves to its assets." *Id.* 156, n.14, 97 S.Ct. 2528.[18] Hence, the inclusion of the net valuation portion of unpaid premiums in reserves and their exclusion from assets would have upset the delicate balance of the equation for determining the policyholders' share of investment income. The result the Court reached (excluding the loading portion of unpaid premiums from assets and premium income but including the net valuation portion in reserves, assets, and premium income), produced a consistent result: The unpaid portion of net valuation premiums is included in full in reserves and in assets; the unpaid portion of loading has no effect on reserves and is excluded from assets.

The inconsistency among interrelated elements that concerned the Court in *Standard Life* is not present here. Reserve Life did not include an item in reserves and exclude the same item from assets. Instead, it recalculated reserves but did not recalculate the loading portion of unpaid premiums,

resulting in consistent treatment for reserves and consistent treatment for assets because a change in loading affects assets, but has no effect on reserves.[19] Here, unlike in *Standard Life*, the same item (*i. e.,* the loading portion of unpaid premiums in the present case and the net valuation portion of unpaid premiums in *Standard Life*) is not being treated inconsistently within the same tax calculation. As was determined in *Standard Life*, reserves and loading are independent for the purpose of computing the policyholders' share of investment income; a change in loading—or the absence of a change—does not result in an inconsistency.

3. The Court in *Standard Life* noted that its approach avoids "uncertainty and confusion" and "provides a practical rule which should minimize the likelihood of future disputes." 433 U.S. at 162, 97 S.Ct. at 2531. The government's position here would cause inconsistency and result in confusion to future litigants.[20]

The formula in section 818(c)(2) for recomputing reserves, which Reserve Life applied, cannot be used to recalculate the loading portion of unpaid premiums. "The amount of loading is not precise. Periodically the Accounting Division [of a company] compares the total of gross annual premiums with the corresponding valuation net premiums in its records and sets loading factors which can be applied to the gross amounts of deferred and uncollected premiums." C. Beardsley, *supra* note 11, at p. 7–18. "Loading is often approximated by studying a sample of the total business in force and determining percentage factors." Files, *supra* note 2, at 98.

The government's interpretation of the Code would create an extremely complex computational problem because there is no

---

**18.** This fraction represents the portion of investment income that is excluded from taxation because it is attributed to future repayments to policyholders. *See* p. 369, *supra.*

**19.** This is because reserves consist of the accumulation of net valuation premiums, *see* note 3, *supra,* and do not include loading. *See* p. 369, *supra.* Assets, on the other hand, include gross premiums and, consequently, both net valua-

tion premiums and the loading portion of paid premiums. *Id.*

**20.** The problem of recalculating the loading portion of unpaid premiums is not presented here because the parties have stipulated as to the extent of liability were the government to prevail.

generally accepted way to recompute gross premium income and assets. Had Congress intended that the loading portion of unpaid premiums be revalued to recompute assets and gross premium income following a section 818(c)(2) recomputation of reserves, presumably it would have provided a comparable formula for revaluing loading. In the circumstances, the lack of any indication in the statute or its legislative history that Congress contemplated the recomputation of the loading portion of premium income strongly suggests that Congress did not intend to do so.

▪ B. The government also relies on the last sentence of section 818(c), which states that "[i]f the taxpayer makes an election under either paragraph (1) [exact revaluation] or (2) [approximate revaluation] for any taxable year, the basis adopted shall be adhered to in making computations under this part (other than section 801 [relating to the definition of "life insurance company"] for the taxable year and all subsequent taxable years unless a change in the basis of computing such reserves is approved by the Secretary." The government contends that the word "basis" in this provision means the amount of the reserves as recalculated under a net level premium method and that the provision therefore requires that this amount of reserves "be adhered to" in making the "computations" of the company's assets and gross premium income in determining its federal tax liability.

Both the language and the legislative history of this provision, however, show that Congress used the word "basis" not in the usual tax sense of the cost of property. Rather, it means the method of recomputation utilized and not the amount of reserves that the recomputation produced. Giving the words their ordinary meaning and reading them in context, the "basis adopted" when a taxpayer elects to recompute reserves is the particular method of recomputation selected, i. e., the exact recomputation under subparagraph 1 or the approximate recomputation under subparagraph 2.

In other words, this provision requires that if an insurance company recomputes its reserves on the approximate valuation method that paragraph (2) permits, as Reserve Life did, it must use that valuation method in determining its net level premium reserves revalued in the year of election as well as in future years, unless the Secretary approves a change in the method of calculating reserves. The purpose of the provision is to insure that a life insurance company use the same figure each time a computation involving reserves is called for and continue to use the same method of computing reserves for its policies from year to year, and to prevent it from shifting between methods in particular years if to do so would give it a tax advantage.

The legislative history confirms that the word "basis" is used in this provision to mean "method." The Senate and House Committee Reports state that

reserves may be converted from a preliminary term basis to a net level premium basis for tax purposes by one of two methods. Paragraph (1) provides the so-called exact revaluation method. Under this method, the life insurance company must compute the reserves for all such contracts on a net level premium basis, using the same mortality assumptions and interest rates for both the preliminary term basis and the net level premium basis. Paragraph (2) provides an approximate revaluation method. Under this method . . .

Senate Report, *supra* note 5, at 73, [1959] U.S.Code Cong. & Ad.News at 1649–50; House Report, *supra* note 5, at 42–43. The Reports further state:

If the taxpayer elects one of the two methods provided in this subsection, all contracts for which life insurance reserves are computed on a preliminary term basis must be so converted. Whichever basis (i. e., the exact revaluation or the approximate revaluation) is adopted for tax purposes must be adhered to in making the computations under this part (other than for purposes of the definition of a life insurance company as deter-

mined under sec. 801) for the taxable year of election and all subsequent taxable years, unless a change in the basis of computing such reserves is approved by the Secretary or his delegate.

Senate Report, *supra* note 5, at 74, [1959] U.S.Code Cong. & Ad.News at 1650; House Report, *supra* note 5, at 43.

The Reports show that Congress intended to require only that an insurance company use the particular method of recomputation of reserves it selected—exact or approximate—for all affected policies in the year of recomputation and for all future years, unless the Secretary approved a change in the method of computing reserves. Although each committee used the word "basis," in context the word means "method," not something else. Indeed, the passages quoted above demonstrate that the committees used the words "method" and "basis" interchangeably and that it used "basis" to mean "method."

## V.

If in 1959 Congress had anticipated the Supreme Court's decision in *Standard Life* and had considered the problem now before us, it might have decided to require life insurance companies to recompute assets and gross premium income as well as reserves. It did not consider the problem, however, and any attempt now to state what it would have done then would be speculative and conjectural. All that Congress said in section 818(c), the provision pursuant to which Reserve Life acted, was that a life insurance company that computes its reserves on a preliminary term basis may recompute its reserves on a net level premium basis. In this complex and intricate area of federal income tax law, we follow the language of the Code as written. If Congress concludes that in light of *Standard Life* the rule should be otherwise, presumably it will amend the Code so to provide.

## CONCLUSION OF LAW

Upon redetermining its reserves under section 818(c), the plaintiff was not required also to redetermine its assets and gross premium income. The parties have stipulated that if we so hold, the plaintiff is entitled to recover $362,700.42, plus (1) the amount of deficiency interest paid on such amount, and (2) interest on both of these amounts from the date of payment, as allowed by law. This refund includes amounts attributable to previously settled issues. Judgment is entered for the plaintiff in accordance with the foregoing.

KUNZIG, Judge, dissenting:

The issue in this case may be stated as follows: Must a life insurance company which changes from preliminary term to an approximation of net level premium in calculating its reserves for tax purposes also change from preliminary term to net level premium in calculating the extent to which unpaid premiums add to gross premium income and assets? The Government says yes, the taxpayer no. For the following reasons, I believe the Government's position has greater merit.

Section 818(a) of the Internal Revenue Code (1954 Code) provides that, generally speaking, all computations entering into the determination of the taxes imposed upon an insurance company "shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners [NAIC]." The NAIC procedures require, *inter alia*, that if an insurance company employs preliminary term for calculating reserves, it must also do so for calculating gross premium income and assets. Correspondingly, if the insurance company uses net level premium when calculating reserves, it must adhere to this method when calculating premium income and assets. In this case, the insurance company has elected under § 818(c) to revalue its reserves for tax purposes using the net level premium method, albeit an approximation thereof. It follows logically from the foregoing propositions that the insurance company must also revalue its premi-

um income and assets according to the same method.

In the following, I elaborate upon the successive points of my argument.

I. Section 818(a) provides as follows:

§ 818. Accounting provisions

(a) Method of accounting.—All computations entering into the determination of the taxes imposed by this part shall be made—

(1) under an accrual method of accounting, or

(2) to the extent permitted under regulations prescribed by the Secretary or his delegate, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).

*Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.*

(Emphasis supplied.) In other words, under § 818(a) an insurance company generally must follow the accounting procedures approved by the NAIC[1] for purposes of the annual statement in performing the computations necessary for preparation of its federal tax return. Because § 818(a) is general on its face, it is subject to override whenever inconsistent with other, more specific provisions of the 1954 Code. *See* S.Rep.No. 291, 86th Cong., 1st Sess., *reprinted in* [1959] U.S.Code Cong. & Ad.News, p. 1649. In this case, however, no other provision of the Code directly touches upon the problem before us.

*Comm'r v. Standard Life & Accident Insurance Co.,* 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977)—the case which generated the tax accounting problem before us— completely bears out my interpretation of § 818(a). The issue in that case was the extent to which unpaid premiums are includable in "reserves", "assets", and "gross

premium income" as those concepts are used in the insurance company part of the 1954 Code. The Court held that, "Since this is essentially an accounting problem, our inquiry is governed by § 818." *Id.* at 158, 97 S.Ct. at 2529. In other words, "unpaid premiums must be reflected in the computation of respondent's tax liabilities 'in a manner consistent with the manner required for purposes of the annual statement approved by the NAIC.'" *Id.* at 163, 97 S.Ct. at 2531. Under the NAIC approach, the net valuation portion of the unpaid premium is included in reserves, assets, and gross premium income, while the loading portion is entirely excluded. *Id.* at 162, 97 S.Ct. at 2531.

The *Standard Life* Court noted in the course of its opinion:

Evidence of congressional respect for NAIC accounting methods is not limited to the portion of the Code concerning life insurance companies. In defining "gross income" and "expenses incurred" for purposes of taxing certain other insurance companies, Congress expressly requires computations to follow "the annual statement approved by the National Convention of Insurance Commissioners." 26 U.S.C. §§ 832(b)(1)(A), (b)(6).

*Id.* at 161 n.24, 97 S.Ct. at 2531.

II. The NAIC procedures require, *inter alia,* that if an insurance company determines reserves by the preliminary term method, it must adhere to the same method in determining the extent to which unpaid premiums add to assets and gross premium income. In other words, preliminary term must be adhered to in computing the breakdown between net valuation premium and loading, with only the former being taken into assets and gross premium income. The NAIC procedures similarly require that if the company employs net level premium to determine reserves, it must use the same method in determining assets and gross premium income. In other words, the NAIC

---

1. The NAIC is a national organization of state regulatory officials, which acts on behalf of the various state insurance departments, and performs audits on insurance companies which do business in several states.

mandates *consistent* accounting procedures in computing the breakdown between net valuation premium and loading, irrespective of the ultimate purpose for which the breakdown is used. These are merely findings of fact of the trial judge in this case.

III. Under § 818(c) of the 1954 Code, insurance companies which have been valuing reserves under the preliminary term method are permitted for tax purposes to revalue according to the net level premium method or an approximation thereof.[2]

The approximation method is *not* derived from the NAIC. Nonetheless—as is apparent from its name—it serves as a simplified means of obtaining approximately the same level of reserves as would be obtained under the exact net level premium method. While involving somewhat different mechanics, *see* § 818(c)(2), the approximation method, therefore, cannot meaningfully be distinguished from the exact method either in purpose or consequence. *See supra* n.2.

IV. The ground is now set for addressing the specific problem before us.

Reserve Life has elected to revalue its reserves according to the approximation method provided by § 818(c)(2). The question is whether it may continue to employ preliminary term in computing the extent to which unpaid premiums add to gross premium income and assets, or must change to net level premium. The principle of consistency mandated by the NAIC procedures would appear to allow no other conclusion than that Reserve Life must also use net level premium when determining premium income and assets. Irrespective of the fact that Reserve Life is technically using the approximation method of § 818(c)(2) when determining reserves, it cannot plausibly be argued that preliminary term is more consistent with the approximation method than is net level premium, the method approximated.

V. The majority ranges far afield of the matter at hand in seeking examples to refute my argument. The majority writes:

> There are many inconsistencies between the NAIC and tax accounting rules, which produce different accounting treatment for the same items under the two systems. In none of those situations, however, is a further accounting adjustment made for tax purposes to reflect a Code provision that requires or permits an accounting treatment for federal tax purposes that is different from that which the NAIC system mandates.

*See supra* at 374. In other words, as a result of random congressional interventions, the body of insurance tax law apparently harbors many instances of inconsistent accounting method. We are presumably to draw from this an inference unfavorable to my own analysis. I note that the majority has failed to make reference to a single IRS release showing that the Service is aware of the inconsistencies and has consciously decided to tolerate or foster them. Nor has the majority cited any cases in which a court or agency tribunal has been called upon formally to test these inconsist-

---

2. The purpose and operation of § 818(c) are explained by the following extract from the relevant Senate Report:

> Some life insurance companies compute their life insurance reserves on what is called a preliminary term basis. The effect of this is to take the full agents' commissions (which are larger in the initial period of a life insurance contract) out of amounts which would otherwise be added to reserves during the first year of a contract and to add correspondingly larger amounts to reserves in later years. The effect of this is to work a hardship on insurance companies using preliminary term reserves as compared with those which use ordinary reserves, since the policy and other contract liability require-

> ments which determine the policyholders' and life insurance company's shares of investment income depend on the size of the reserves. Moreover, premium additions to reserves, deductible under phase 2, also would in some cases be smaller. *To avoid this result, life insurance companies which have computed their reserves on a preliminary term basis are permitted to recompute their reserves on a net level premium basis. This can be done either by an exact revaluation of the reserves to a net level premium basis or by approximating this result under a formula set forth in the bill.*
>
> S.Rep.No.291, 86th Cong., 1st Sess., *reprinted in* [1959] U.S.Code Cong. & Ad.News, pp. 1605–1606 (emphasis supplied).

encies. Instead, we have simply the naked fact that no official action has yet been taken with respect to certain problems that the majority has brought to light—a legal non-event, in effect. From this alone, it is not possible to draw any inference concerning tax policy. The persistence of the inconsistencies may be attributable to any of a number of causes, not least that the inconsistencies may be more apparent than real.

The majority crowns its discussion of § 818(a) with the following interpretation thereof:

> We think that the most persuasive explanation of these inconsistencies is that Section 818(a) requires that the accounting treatment in the Annual Statement be followed for federal tax purposes unless the Code provides or permits a different treatment.

See supra at 375. I heartily endorse this general principle, but feel that it leads to my conclusion, not the majority's. I will restate in the form of a question the two main components of the majority's rule.

First, does the accounting treatment in the Annual Statement require consistent accounting methods in the computation of reserves, gross premium income, and assets? This, of course, is my focal contention. The trial judge found that this is indeed the case and the majority has apparently conceded the point. See supra at 373–374.

Second, does the 1954 Code provide or permit that inconsistent methods may be used, irrespective of the mandate contained in the NAIC procedures? This merely restates the basic issue we have been arguing throughout. Section 818(c) provides that an insurance company which has been valuing reserves under the preliminary term method may revalue according to the net level premium method or an approximation

thereof. Apart from the general rule stated in § 818(a), however, the tax code is silent on the question whether additional corresponding adjustments have to be made—or do not have to be made—in the manner of accounting for gross premium income and assets. As the majority correctly points out, the legislative history is also silent on the question whether additional corresponding adjustments have to be made. See supra at 372–373. This being the case, the NAIC approach—i. e., consistency—governs. Or, as the Court stated in Standard Life: "Since general [accrual] accounting rules are not controlling, the statute requires use of the NAIC approach to fill the gap." 433 U.S. at 162, 97 S.Ct. at 2531.

My argument is premised upon the viewpoint that consistency in accounting methods is a virtue, not lightly to be disregarded. The Court took a similar position in Standard Life, as follows: "Although we do not accept the notion that there must be perfect symmetry in the tax laws, there should be a measure of consistency in the accounting treatment of an item affecting interrelated elements...." 433 U.S. at 160, 97 S.Ct. at 2530.

I am highly troubled by the majority's decision. It seriously undermines the authority of the NAIC procedures and does not supply a substitute yardstick. As a consequence, a threat is posed to the predictability and rationality of insurance tax accounting.

I respectfully dissent.