INDIVIDUAL LIFE ASSURANCE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Individual Life Assurance Co. v. Commissioner
Docket No. 24547-84.
United States Tax Court
T.C. Memo 1986-201; 1986 Tax Ct. Memo LEXIS 409; 51 T.C.M. (CCH) 1028; T.C.M. (RIA) 86201; May 19, 1986. Norman E. Beal, for the petitioner. Seymour I. Sherman, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge *: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Year
Deficiency
1977
$417,958.00
1978
101,546.00
1979
37,410.00
The issues that this Court must decide are (1) whether petitioner, the reinsuring company in two coinsurance transactions, may deduct amounts paid to or retained by the ceding company as ceding commissions in the year accrued or must amortize such amounts *410 as capital expenditures or deferred expenses over the lives or durations of the transactions; and (2) whether petitioner must include in income an increase in reserves resulting from a section 818(c) [1] revaluation of reserves. [2]
The facts of this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure, and are so found. Petitioner is a Missouri corporation that had its principal place of business in Kansas City, Missouri at the time its petition was filed. Petitioner's principal business activity is the reinsuring of life insurance risks under policies written by other insurers. Petitioner did not, during the period 1977 through 1980, directly write any policies of life insurance. When a company issues a policy or contract of permanent life insurance, it must thereafter reflect as a liability, designated by the term "reserve", the excess of the then present value of future benefits *411 payable under the policy over the then present value of future net premiums to be received, computed as applicable state laws or regulations prescribe. [3] The required reserve amount constitutes a liability account against which the company must maintain cash or other assets. The reserve amount reduces the surplus of the company available for other purposes. During the earliest years of a life insurance policy, the total of reserves required and expenses incurred *412 frequently exceeds the total periodic premiums received. The result for a company experiencing a substantial growth in sales of life insurance policies is a drain on surplus, which could curtail further underwriting. Life insurance reserves may be computed under different methods, including the "net level" method or a "preliminary term" method. Under the "net level" method a new life insurance policy immediately contributes fully to reserves. As first year expenses are typically quite high, this method often causes a rapid surplus drain. The "preliminary term" method of computing reserves, under which life insurance reserves are zero or relatively low in the first year, mitigates the drain on surplus in the early years of a policy and adds slightly greater annual increases to reserves in subsequent years. Over the life expectancy of the insured, the same ultimate reserve is required under either the net level or preliminary term method. Another means of restoring or generating surplus is to reinsure with another life insurance company all or part of the risks undertaken. Reinsurance transactions may be classified into two categories: (1) assumption reinsurance and (2) coinsurance, *413 which is also known as indemnity reinsurance. This case does not involve assumption reinsurance. [4]
Coinsurance may also be classified into two categories: (1) conventional coinsurance and (2) modified coinsurance ("modco"). In a conventional coinsurance transaction, the ceding company transfers to the reinsuring company all or part of its liability on the reinsured policies but remains directly liable to the policyholders, collects premiums, and pays claims and expenses. The ceding company reduces its reserves attributable to the transferred liabilities, and the reinsuring company *414 increases its reserves to cover the acquired risks. The ceding company also transfers assets agreed to be attributable to the coinsurance transaction to the reinsuring company. The reinsuring company receives an agreed upon premium from the ceding company for assuming the risks but reimburses the ceding company for expenses attributable to the risks reinsured. A modco transaction differs from a conventional coinsurance transaction in that the ceding company retains the reinsured assets, continues to carry the reserves on its books and collects any investment income derived from assets supporting the reserves. If the parties elect under section 820(a), however, the ceding company's retention of assets and corresponding reflection of reserves is treated for Federal income tax purposes as merely custodial for the reinsuring company. Consequently, for Federal tax purposes, the same transfer of reserves from the ceding to the reinsuring company takes place as in conventional coinsurance. A conventional coinsurance transaction normally results in a net payment by the ceding company to the reinsurer; a modco transaction normally results in a net payment by the reinsurer to the ceding *415 company. Companies frequently enter into conventional coinsurance and modco transactions simultaneously, thus minimizing the amount or value of cash or other assets being transferred from one company to the other. The reinsurance transactions at issue in this case are a conventional coinsurance and a modco transaction. Effective 11:59 p.m., December 31, 1980, petitioner, as reinsurer, and Citizen's Insurance Company of America (CICA), as ceding company, entered into a conventional coinsurance agreement and a modco agreement with respect to certain portions of ordinary life risks under a block of insurance policies written by CICA. Petitioner reinsured 31.5642963% of the ordinary life risks under the conventional coinsurance agreement and 58% of such risks under the modco agreement. CICA had computed its reserves with respect to the block of business reinsured under a preliminary term method. Petitioner properly elected to revalue such reserves under the approximate revaluation method prescribed in section 818(c)(2). [5] With regard to the conventional coinsurance transaction, the initial statutory reserves, the initial cash payment or credit to petitioner, the excess of required *416 reserves over such cash payment or credit (constituting the ceding commission to CICA), the increase in reserves for Federal tax purposes pursuant to the section 818(c)(2) election, and the loss deduction that petitioner claimed in its 1980 return as a result of the transaction were as follows: Reserves required
$1,150,000.00
Cash to petitioner
230,000.00
Excess (ceding commission)
$ 920,000.00
Section 818(c)(2) Revaluation increase
190,000.00
Loss or deduction claimed
$1,110,000.00
*417 Petitioner paid or credited CICA with a ceding commission of $230,000 in respect of the modco transaction. Petitioner and CICA made a section 820 election to treat the modco transaction, for Federal tax purposes, as a conventional coinsurance transaction, under which CICA's physical retention of the reinsured assets is regarded as merely a custodial retention on petitioner's behalf. The cash payment or credit by petitioner to CICA, the increase in reserves for Federal tax purposes pursuant to the section 818(c)(2) election, and the loss or deduction that petitioner claimed on its 1980 return as a result of the modco transaction, were as follows: Cash (ceding commission)
$230,000.00
Section 818(c)(2)
revaluation increase
349,166.00
Loss or deduction claimed
$579,166.00
The first issue concerns the current deductibility of the ceding commissions that petitioner paid to CICA. This Court addressed the same issue and substantially similar facts in Beneficial Life Insurance Company v. Commissioner,79 T.C. 627 (1982). In that case we held that ceding commissions paid by the reinsuring company in a coinsurance transaction are currently deductible. *418 79 T.C. at 646. Respondent asks us to overrule our decision in Beneficial Life. We decline to do so and adhere to our analysis in that case. [6]
The second issue is whether petitioner must include in income its reserves as revalued pursuant to its section 818(c)(2) election. Beneficial Life also controls here. SeealsoReserve Life Insurance Co. v. United States,640 F.2d 368, 377 (Ct. Cl. 1981); Security Beneficial Life Insurance Co. v. United States,517 F. Supp. 740, 770-72 (D. Kan. 1980), affd. 726 F.2d 1491 (10th Cir. 1984). We decline respondent's invitation to overrule Beneficial Life. *419 To reflect certain concessions, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned to Judge Williams for decision and opinion.↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years here in issue, unless otherwise indicated. ↩
2. Because we hold for petitioner or these issues, we do not reach a third argued by the parties.↩
3. Permanent life insurance policies are normally issued on the basis of "level" premiums, which means that the premium charged is based upon the age and insurable status of the insured at the original issue date of the policy, and remains constant. The net valuation portion of the annual premium on a permanent or long-term life insurance policy will normally exceed the true cost of insurance in the earlier policy years, but will thereafter be less than the true cost of insurance. That excess in the earlier years, together with earnings at an assumed rate, develops the policy reserve, which is expected to be available to make up the later inadequacies in the annual net premium and ultimately to pay the policy benefits.↩
4. In assumption reinsurance, one insurance company (the ceding company) transfers some or all of its policies to another company (the assuming or reinsuring company). The assuming company steps into the ceding company's shoes, becoming directly liable to the policyholders and assuming, in respect of the policies transferred, the reserve liability and entitlement to all future premiums. Correlatively, the ceding company is relieved of the reserve liability and, accordingly, reduces its required reserves. Beneficial Life Insurance Company v. Commissioner,79 T.C. 627, 636↩ (1982).
5. Section 818(c) was enacted to eliminate any disparity in income tax treatment that would otherwise result from a decision to calculate reserves under a preliminary term or net level method. Without section 818(c), electing the preliminary term method of valuing reserves will result in greater income tax liability in the earliest year of a policy because the required reserves, and consequently the deduction for additions to reserves, will be lower than under the net level method of valuation. In essence, section 818(c) permits a life insurance company using the preliminary term method to recalculate its reserves under the net level method or an approximation method for Federal tax purposes. Beneficial Life Insurance Company v. Commissioner,79 T.C. at 648-49↩.
6. We recently reached the same conclusion on similar facts in Modern Security Life Insurance Company v. Commissioner,T.C. Memo. 1985-629↩. In that case we held that allowances paid to the ceding company by the reinsuring company in a modco transaction are analogous to currently deductible underwriting expenses to the reinsuring company and that the reinsuring company was therefore entitled to subtract from income any consideration returned to the ceding company in respect of reinsurance ceded.