**NATIONAL STATES INSURANCE COMPANY, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 84–2047.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1985.

Decided April 3, 1985.

Richard Farber, Washington, D.C., for appellant.

Mark Arnold, St. Louis, Mo., for appellee.

Before HEANEY and ARNOLD, Circuit Judges, and HANSON *, Senior District Judge.

ARNOLD, Circuit Judge.

The question presented is whether the taxpayer is a "life insurance company" within the meaning of Section 801(a) of the Internal Revenue Code, 26 U.S.C. § 801(a) (1982), so as to qualify for certain favorable tax treatment. This question depends, in turn, upon whether the taxpayer is issuing, in a sufficiently great proportion, policies that are "guaranteed renewable life, health, and accident insurance policies" as that term is defined in Treas.Reg. § 1.801–3(d), T.D. 7172, 26 C.F.R. § 1.801–3(d) (1984). Such policies (referred to by the parties as GRHA policies) are defined by the regulation to include health and accident contracts which are not cancellable by the company, but under which the company reserves the right to adjust premium rates by classes, "and with respect to which a reserve in addition to the unearned premiums ... must be carried to cover" the company's obligation. *Id.* There is no dispute that the health and accident policies issued by the taxpayer in this case are in fact noncancellable, so as to meet the first requirement of the regulation. The issue, rather, is whether the taxpayer maintains reserves "with respect to" those policies in addition to the reserve for unearned premiums. The Tax Court, with five judges dissenting, held in favor of the taxpayer, and the Commissioner appeals. 81 T.C. 325.

We affirm. We have little of substance to add to the thorough opinion of the Tax Court, which adequately answers both the Commissioner's arguments and the arguments of the dissenting judges on that Court. We venture only a few observations.

---

* The Hon. William C. Hanson, Senior United States District Judge for the Southern and Northern Districts of Iowa, sitting by designation.

The government concedes that "[a]ll of taxpayer's individual GRHA policies satisfy the industry definition and understanding of the guaranteed renewable product type." Brief for Appellant at 1. It points out, however, that under the regulation a contract does not qualify as a GRHA policy unless reserves are maintained "with respect to" it in the manner prescribed by the regulation. Here, the taxpayer's reserves consists of two components: an unearned-premium reserve and an additional reserve. The unearned-premium reserve, about which there is no dispute, covers claims or liabilities that are expected to be incurred during the remainder of the current policy year, for which the premium has already been paid. This unearned-premium reserve diminishes with the passage of time and is necessarily reduced to zero at the end of a policy year. The "additional reserve," which the regulation requires to be maintained "with respect to" the policy, is designed to cover claims and benefits which are expected to arise after the end of the current premium-paying period, assuming that the insured chooses to renew the policy, as he has a right to do. This additional reserve is intended to cover future benefits that the company will have to pay under the policy in excess of future premiums it expects to receive. Typically, a company's liabilities will be greater in the later years of a policy, because the likelihood that an insured will become ill or have an accident increases with the passage of time.

There are two recognized methods of computing this additional reserve. Both are concededly actuarially sound. One method is called the net-level method, and the government agrees that companies using this method do qualify under the regulation. Under this method, with respect to each policy in force, a reserve in addition to that for unearned premiums is computed by calculating the excess of the present value of future benefits payable over the present value of future net premiums receivable. By contrast, under the preliminary-term method of valuing the additional reserve, the method used by taxpayer here and challenged by the government, no amounts are included in the additional reserves on account of policies that have been in force for two years or less. Instead, in the case of these policies, additional reserves are not computed until after the passage of two years, at which point they are computed as though the policy had just been issued, to a person two years older than the age of the insured at the actual inception of the policy, and as though the net-level method was then being used on such hypothetical newly issued policy. In this way, the amount of money actually accumulated in the additional reserve will be, for any given policy, the same under the preliminary-term method as it would have been under the net-level method, if the policy remains in force for the life of the insured.

The preliminary-term method, which is also commonly used by companies issuing life insurance policies proper, as opposed to health and accident policies (though in the case of these companies the more common method seems to be to use only a one-year preliminary term), is recognized as actuarially sound and is sanctioned by state regulatory authorities, including the authorities in the State of Missouri, which have jurisdiction over the taxpayer here. The preliminary-term method is used, not for any reason having to do with avoidance of taxes, but for real business purposes. An insurer's administrative costs in the first year or two of a policy are much higher than those in later years. Thus, all of the income received on any given policy may have to be devoted, during these early years, to front-end administrative costs, also known as "loading expenses."

The government's position comes down to this: because no amount of money is added to additional reserves on account of policies not yet two years old, it cannot be said that any additional reserves are being maintained "with respect to" those policies. Ordinarily we should defer to the Commissioner's reading of his own regulation, and here we agree that the words of the regulation, simply as a matter of English grammar, can be made to bear the meaning

contended for by the government. As the Tax Court has pointed out, however, the practical, business, and legislative reasons for interpreting the regulation differently are compelling. In the first place, the language of the regulation comes from a Senate Report accompanying the Revenue Act of 1942, S.Rep. No. 1631, 77th Cong., 2d Sess. 144–45 (1942), and this report clearly refers to industry practice as the model for its definition of GRHA policies. Everyone concedes that the industry regards policies that follow the preliminary-term method as being GRHA policies for all practical and business purposes. All of the expert witnesses who appeared before the Tax Court on this question so testified. Secondly, the concept of reserves is meaningful only with respect to a group of risks or policies. To speak of a reserve in connection with an individual policy is economically meaningless, because the very idea of a reserve is to estimate the amount of money that will be required to cover a certain future contingency. This contingency is simply the average of a number of risks or contingencies spread over large groups of people. There is no appreciable chance that any given policyholder will in fact turn out to get sick, or have accidents, the average number of times, so, although reserves may be computed in the case of each policy, the whole computation has meaning only when it occurs many times. Therefore, it can properly be said that additional reserves do exist "with respect to" all policies issued by the company, even those within the first two years of their existence. All of the company's reserves, including the additional reserves, are available to meet all claims, including those claims arising under policies less than two years old.

The government's position, then, although tenable as a matter of language, is hypertechnical, even more so than is customary in the tax field, and inconsistent with reality in this industry. These policies in fact are noncancellable, they involve long-term risks for which the taxpayer is required by law to maintain adequate reserves, including reserves in addition to unearned premiums, and the preliminary-term method of computation is well recognized in the industry and sanctioned by state law. Just how tenuous the government's argument is becomes apparent when we consider, on reflection, that its position would be satisfied if the taxpayer added one dollar (or even one cent) to additional reserves for each policy less than two years old, even if at the same time it reduced additional reserves by an equal amount for each policy more than two years old. In this way, additional reserves would be literally maintained in the case of each individual policy issued by the company, but no more reserves, in real terms, would exist than do now. We decline to read the regulation to make such a distinction acceptable.

Affirmed.