Mel CYRAK, Trustee, First City Bank of Richardson, Uncertain, Inc., Loretta Blum, Inc., Capital Bank, Donald Smith, Sanger Harris, Bent Tree Homeowners Assoc., Inc., Xerox Credit Corp., Ed Noble, Texas Plywood & Lumber, Inc., Oldach N.R.G. Windows, Inc., Boundary Mark, Inc., United Marble, Inc., Plaintiffs–Appellees,

v.

Kathleen POYNOR,
Defendant–Appellant.

Civ. A. No. CA3–87–0414–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 25, 1987.

Robin E. Phelan and Mark X. Mullin of Haynes & Boone, Dallas, Tex., for plaintiff-appellee, Mel Cyrak, trustee.

Philip I. Palmer, Jr. of Palmer & Palmer, P.C., Dallas, Tex., for defendant-appellant.

**OPINION**

FITZWATER, District Judge.

A chapter 7 debtor who, upon the accidental death of her co-debtor husband, became entitled to acquire life insurance proceeds within 180 days of the petition date, appeals the bankruptcy court's denial of her claim that the proceeds are totally exempt from her estate. The court is asked to interpret two Bankruptcy Code provisions to determine whether the proceeds are totally exempt pursuant to 11 U.S.C. § 522(d)(7) or are only partially exempt as provided in § 522(d)(11)(C). Because the court concludes that the bankruptcy court correctly held the proceeds are only partially exempt, the order appealed from is AFFIRMED.

**I.**

**BACKGROUND FACTS AND PROCEEDINGS BELOW**

The facts are straightforward. Defendant-appellant, Kathleen Poynor ("Kathleen"), and her late husband, Tom, filed a voluntary chapter 7 petition on June 20, 1986. On August 11, 1986, within 180 days of the filing, Tom was killed in an automobile accident. Tom's life was insured in the amount of $500,000 with Equitable Life Assurance Society of the United States ("Equitable") and in the amount of $362,000 with Columbus Mutual Life Insurance Company ("Columbus").[1] At the time of Tom's death both policies were term policies which had no cash surrender value.[2]

In the original schedules filed with their chapter 7 petition, the Poynors selected the Texas state property exemptions; in October 1986, following Tom's death, Kathleen amended schedule B–4 to claim the federal

---

1. Columbus disputes liability and a claim against Columbus is being pursued in state court. (Bk.Ct.Mem.Op. at 3).

2. The Columbus policy was an ordinary life policy which, in December 1985, was converted to a term policy.

exemptions. She listed as exempt, pursuant to § 522(d)(11)(C), her rights as beneficiary of the life insurance policies. In January 1987, just prior to the bankruptcy court hearing on the objections to her exemption claim, Kathleen filed a second amended schedule B–4 in which she claimed the life insurance proceeds were completely exempt pursuant to § 522(d)(7).

On the date the Poynors filed their chapter 7 petition, the premiums on the Equitable and Columbus policies were past due and unpaid and the policies were beyond the period of mandatory reinstatement. Subsequent to June 20, 1986, but prior to Tom's death, Kathleen sent premium payments to the insurance companies, who retained the checks. Equitable paid $10,000 of the policy proceeds for Tom's funeral and paid $490,000 to Kathleen; Columbus also apparently paid the proceeds of its policy.[3]

Kathleen contended in the bankruptcy court that the insurance proceeds were completely exempt from her bankruptcy estate pursuant to § 522(d)(7).[4] The trustee and various creditors objected to the exemption claim. The bankruptcy court concluded that the life insurance proceeds were exempt only to the extent reasonably necessary for Kathleen's support, as provided in § 522(d)(11)(C).[5]

## II.

## ANALYSIS

This appeal asks the court to determine which of two Bankruptcy Code provisions applies to life insurance proceeds that a debtor acquires or becomes entitled to ac-quire as a policy beneficiary within 180 days after the petition date. The parties and the court have located only two cases which appear to have decided the question. These cases reach contrary results, and neither analyzes together the two Code provisions that the parties ask the court to interpret in today's case. To determine the question presented by this appeal, the court first reviews the two conflicting decisions and then analyzes the Code provisions to decide which section applies.

## A.

In *In re Walters*, 14 B.R. 92 (Bankr.S.D. W.Va.1981), *aff'd*, 724 F.2d 1081 (4th Cir. 1984), the debtor[6] claimed as exempt pursuant to § 522(d)(7) the life insurance benefits that he became entitled to receive when his seven-year old son died one week after the debtor filed a voluntary chapter 7 petition. The bankruptcy court, construing §§ 522(d)(7) and 541(a)(5)(C), focused upon the following: the debtor's, rather than the estate's, ownership of the policies, 14 B.R. at 94; a perceived difference between insurance proceeds derived from policies owned by persons other than a debtor and those derived from policies owned by a debtor, *id.*; and the fact that a debtor must bear the duty of paying post-petition premiums for such life insurance protection, *id.* at 95. The bankruptcy court held that the value and nature of property claimed to be exempt is to be determined as of the petition date and that, once entitlement to an exemption is determined, the debtor's rights to the property are not further impaired by § 541 of the Code. For these reasons the court held that the life insur-

---

**3.** The court inquired at oral argument whether Columbus had tendered policy proceeds to Kathleen in view of the litigation pending between Kathleen and Columbus. *See* note 1, *supra*. The trustee indicated that Columbus had paid policy proceeds to Kathleen.

**4.** The bankruptcy court (Bk.Ct.Mem.Op. at 1–3 & *passim*) and the trustee (Appellee Br. at 9 and 17) also discuss Kathleen's reliance upon § 522(d)(8). In her brief, however, Kathleen makes plain that she does not rely upon § 522(d)(8) because the insurance policies in question have no cash surrender value. (Appellant Br. at 4).

**5.** The trustee also contended in the bankruptcy court, and at oral argument before this court, that the policies in question lapsed due to nonpayment of premiums and that Kathleen was not the owner of the policies on the date of the chapter 7 petition. The bankruptcy court did not reach this question. (Bk.Ct.Mem.Op. at 9).

**6.** The bankruptcy court opinion refers to only one debtor, the husband. The court of appeals' opinion uses the terms "debtor" and "debtors" interchangeably.

ance proceeds were entitled to complete exemption pursuant to § 522(d)(7). 14 B.R. at 95.

On appeal, the Fourth Circuit affirmed. *BancOhio National Bank v. Walters,* 724 F.2d 1081, 1083 (4th Cir.1984). The circuit court rejected the appellant's reliance upon the after-acquired property provision of § 541(a)(5). Reading the total statutory scheme, the circuit court construed the bankruptcy estate definition in § 541 to be subject to the exemption provisions of § 522 and, on that basis, held that § 522(d)(7) exempted not only an unmatured life insurance contract owned by a debtor but also the proceeds derived from such a policy. 724 F.2d at 1083. The court agreed with the bankruptcy court that the proceeds, as an incident of ownership of the contract, flow to the debtor rather than to the estate, and reasoned that its construction did not "offend the operation of § 541(a)(5) since proceeds from like insurance policies *not* owned by the debtor would be included in the estate." *Id.* (Emphasis in original). The court agreed with the conclusion of the bankruptcy court that one who pays premiums and thus fulfills his contractual obligations should not be denied the benefits of the contractual relationship but that one who does not own or pay premiums on a policy, and thus receives a windfall, should not receive the benefit of the exemption. *Id.* (citing 14 B.R. at 94). In reaching the conclusion that § 522(d)(7) exempted the policy proceeds, neither the circuit court nor the bankruptcy court addressed the applicability of § 522(d)(11)(C).[7]

A Ninth Circuit district court reached a contrary result in *In re Woodson,* 76 B.R. 761 (N.D.Cal.1985)\*, in which the court construed the following California state law exemptions: Cal.Code Civ.Proc. § 704.100(a),[8] which is similar to § 522(d)(7) and completely exempts unmatured life insurance policies; and Cal.Code Civ.Proc. § 704.100(c),[9] which is similar to § 522(d)(11)(C) and exempts benefits from matured life insurance policies to the extent reasonably necessary for the debtor's support. 76 B.R. at 762.

In *Woodson* a debtor claimed that a life insurance policy that he owned and as to which he was the beneficiary was exempt under California law. The policy in question matured three days after the debtor filed his petition. The debtor argued that "because he already had a legal interest in the policy as its owner at the time he filed his petition, the bankruptcy exemption rules should classify his interest in the policy as of that date." *Id.* He contended that the nature of the policy became fixed on the date he filed for bankruptcy and that subsequent events could not alter that status. *Id.*

The district court rejected the debtor's contention on the basis of the different interests that the debtor had at the time he filed for bankruptcy and at the time the policy benefits accrued to him as beneficiary. *Id.* The *Woodson* court held that the Bankruptcy Code "is written in flexible language" and that, while on the petition date the "ownership interest was wholly exempt," when the debtor's "separate interest as a beneficiary of the policy matured three days after the bankruptcy filing ... this latter interest became a part of the bankruptcy estate by virtue of § 541(a)(5)." *Id.* at 763.

The *Woodson* court determined that the underlying rationale for permitting bankruptcy exemptions for life insurance policies is "to provide certainty for policy own-

---

7. Perhaps this is so because a beneficiary must be a dependent of the insured to claim the exemption and, in *BancOhio,* the beneficiary was the father of a 7–year old son and obviously not a dependent of his son.

8. Cal.Code Civ.Proc. § 704.100(a):

   Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim.

\* Withdrawn from publication in bound volume at court's request.

9. Cal.Code Civ.Proc. § 704.100(c):

   Benefits from matured life insurance policies (including endowment and annuity policies) are *exempt to the extent reasonably nec-essary* for the support of the judgment debtor and the spouse and dependents of the judgment debtor.

ers and beneficiaries." *Id.* The court reasoned that, when a policy has not matured it is difficult to calculate the beneficiaries' needs; when the policy has matured "there is no such difficulty in allowing for the beneficiaries' support." *Id.* The court did not discuss in detail the Fourth Circuit's opinion in *BancOhio.* However, the court did reject the *BancOhio* opinion as being "unconvincing" if the opinion could be read as being contrary to the conclusion reached by the *Woodson* court. *Id.*

### B.

This court commences its determination of the applicable Code provisions by examining the Code sections themselves. *See Cimmaron Oil Co., Inc. v. Cameron Consultants, Inc.,* 71 B.R. 1005, 1009 (N.D.Tex. 1987) (starting point in statutory interpretation is language of statute).

■ Section 541(a)(1) generally provides that the property of a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Even property that is entitled to be exempted is initially regarded as estate property until it is claimed and distributed as exempt. *Matter of Hendricks,* 11 B.R. 48, 50 (Bankr.W.D. Mo.1981). Additionally, certain interests in property that a debtor either acquires or becomes entitled to acquire within 180 days of the petition date are included in the property of the estate. 11 U.S.C. § 541(a)(5). Included within these after-acquired property provisions is an interest in property acquired as a beneficiary of a life insurance policy. 11 U.S.C. § 541(a)(5)(C); *see In re McAlister,* 56 B.R. 164, 166 (Bankr.D.Or.1985) (state exemptions case) (life insurance proceeds received within 180 days post-petition upon death of co-debtor spouse were property of estate under § 541(a)(5)(C)).

In § 522 of the Code, Congress has provided that certain property may be exempted from the estate. Section 522(d)(7), on which Kathleen relies, exempts

> Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

11 U.S.C. § 522(d)(7). Section 522(d)(11)(C), which the trustee contends is applicable, exempts

> The debtor's right to receive, or property that is traceable to ... a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

11 U.S.C. § 522(d)(11)(C).

On appeal, Kathleen argues that the Equitable and Columbus policies are completely exempt from inclusion in her estate pursuant to § 522(d)(7) because they are unmatured life insurance contracts owned by the debtor and that § 522(d)(11)(C) is only a supplemental exemption which does not limit other exemptions. She contends that the exemptions of § 522 are dominant over the § 541 provisions that define the bankruptcy estate and, therefore, the proceeds flowing from a policy already exempt under § 522(d)(7) do not come back into the estate under § 541(a)(5)(C). Kathleen posits that §§ 541(a)(5)(C) and 522(d)(11)(C) apply only where the policy is owned by someone other than the debtor, with the debtor's only interest being that of named beneficiary.

The trustee contends the bankruptcy court correctly decided that the insurance proceeds were only exempt pursuant to the terms of § 522(d)(11)(C). He reasons that § 522(d)(7) applies to the rights of a policy owner, in which case the policy is totally exempt, and that § 522(d)(11)(C) applies to the rights of a policy beneficiary, regardless whether the beneficiary is the policy owner, in which case the proceeds are exempt only as necessary for reasonable support. The bankruptcy court agreed with the trustee, and relying upon the legislative history concluded that §§ 522(d)(7) and (d)(8) "are designed solely to protect the *ownership interests* ... in a life insurance policy" and that § 522(d)(11) "is designed to protect the *beneficiary interests* in a life insurance contract." (Bk.Ct.Mem.Op. at 6). (Emphasis in original).

■ This court finds it unnecessary to inquire whether the Code provisions in question apply to the debtor as owner or as beneficiary. *Cf. Woodson*, 76 B.R. at 763; *Walters*, 14 B.R. at 94. Instead, the court believes the better approach is to focus upon the property interest in question and to determine whether the interest is an unmatured insurance contract or a payment under an insurance contract. This is so because § 522(d)(7) plainly pertains only to an unmatured insurance contract owned by a debtor; § 522(d)(11)(C), on the other hand, applies in terms to payments under a life insurance contract.

■ When §§ 541(a)(5)(C), 522(d)(7), and 522(d)(11)(C) are read together, it is clear that § 541(a)(5)(C) sweeps back into the estate life insurance payments acquired within 180 days post-petition. Section 522(d)(11)(C) exempts these payments to the extent reasonably necessary for support. Section 522(d)(7) does not apply to such payments; it exempts only unmatured life insurance contracts *qua* contracts.

This interpretation of the Code is likewise supported when a related section is added to the analytical amalgam of the foregoing three Code provisions. Section 522(d)(8) essentially exempts the debtor's interest, not to exceed $4,000, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract. The provision applies to unmatured contracts owned by the debtor under which the insured is either the debtor or an individual on whom the debtor is dependent. Therefore, unlike § 522(d)(7), which contemplates an unmatured life insurance contract that has no value other than an inchoate right to benefits at the death of the insured, § 522(d)(8) provides, in the instance of a contract that has present value (dividend, interest, or borrowing rights),

that the contract is exempt only to the extent of $4,000.[10]

Accordingly, where, as in §§ 522(d)(11)(C) and (d)(8), there is present value to creditors and to the debtor, Congress has exempted the value only to the extent reasonably necessary for the support of the debtor and his dependents (§ 522(d)(11)(C)) or to a maximum of $4,000 (§ 522(d)(8)). However, where, as in § 522(d)(7), a debtor owns an unmatured life insurance policy that has no present value, Congress has exempted the contract completely.

Congress did not intend, by enacting § 522(d)(7), to create a potentially huge loophole in the case of life insurance payments that become payable post-petition. Instead, § 522(d)(7)

> continues in a different manner the protection of the 1898 [Bankruptcy] Act against forfeiture of life insurance policies. It protects debtors against having to find new insurance at a higher rate or at any time when they may be uninsurable. Life insurance policies with no loan or cash surrender value would be completely exempt under this provision.

Vukowich, *Debtors' Exemption Rights Under the Bankruptcy Reform Act*, 58 N.C. L.Rev. 769, 786 (1980). (Footnote omitted).

Moreover, the legislative history of § 522(d)(7) rejects such a broad interpretation of its reach. According to the report of the House of Representatives Committee on the Judiciary, § 522(d)(7)

> exempts a life insurance contract, other than a credit life insurance contract, owned by the debtor. This paragraph refers to the life insurance contract itself. It does not encompass any other rights under the contract, such as the right to borrow out the loan value. Because of this provision, the trustee may not surrender a life insurance contract,

---

10. The court assumes, without deciding, that § 522(d)(7), on the one hand, pertains to so-called "term" life insurance policies, that is, insurance effective for a period of years, at the expiration of which it automatically expires, and which has no loan or cash value except in the event of the death of the insured prior to the expiration of the contract, *see* 1 J. Appleman,

*Insurance Law and Practice* § 3, at 17–18 (1981), and that § 522(d)(8), on the other hand, pertains to ordinary or whole life insurance, that is, insurance written upon the life of an individual for a fixed amount, at a definite annual premium, by which an insured attains an estate immediately upon the first payment, *id.* § 2, at 13, 15.

which remains property of the debtor if he chooses the Federal exemptions.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6317.

The court concludes that Congress intended that life insurance payments or life insurance contracts with present monetary value be included within the bankruptcy estate and exempted only partially. Congress meant to exclude unmatured life insurance contracts with inchoate value because such contracts offer little or nothing to the debtor's ability to pay creditors, and requiring the debtor to surrender the policy might work an unwarranted hardship that would serve no justifiable bankruptcy purpose.

Accordingly, when asked to determine whether life insurance is exempt from the bankruptcy estate, bankruptcy judges should first decide whether the property in question constitutes a life insurance *payment* (or property traceable to a payment) or is instead an unmatured life insurance *contract* owned by the debtor. If the property is (or is traceable to) a *payment,* the property is exempt only as provided in § 522(d)(11)(C). If the property is an unmatured *contract* owned by the debtor, the bankruptcy judge should then ascertain whether the contract provides dividends, interest, or borrowing rights. If it does, the contract is exempt only as prescribed by § 522(d)(8); if the contract has no present value, the judge should apply § 522(d)(7) and hold that the contract itself is totally exempt.

In the present case the bankruptcy court correctly held that the insurance proceeds that Kathleen became entitled to acquire within 180 days post-petition were exempt under § 522(d)(11)(C), and hence, only to the extent necessary for her reasonable support.[11] Accordingly, the bankruptcy court order appealed from is affirmed.

AFFIRMED.

---

11. Counsel advised the court at oral argument that the bankruptcy court has already determined the amount of the policy proceeds necessary for Kathleen's reasonable support. This determination, if disputed, is not now before this court.