**WESTERN SOUTHERN LIFE INSURANCE CO., et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Nos. C–1–90–492, C–1–91–835.**

United States District Court, S.D. Ohio, W.D.

Dec. 16, 1993.

Donald Crichton Alexander, Akin Gump Strauss Hauer & Feld, Washington, DC, for plaintiffs.

D. Michael Crites, Hahn, Loeser & Park, Columbus, OH, Jan Martin Holtzman, De-partment of Justice, Cincinnati, OH, Dennis M Donohue, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Plaintiffs' Motion for Summary Judgement (doc. 26), the Defendant's Memorandum in Opposition (doc. 34), the Defendant's Motion for Partial Summary Judgement (doc. 35), the Plaintiffs' Reply (doc. 36), the Plaintiffs' Memorandum in Opposition (doc. 37), the Defendant's Reply (doc. 40), the United States' Post hearing Response (doc. 43), and the Plaintiffs' Memorandum in further Support (doc. 44).

### BACKGROUND

Life insurance companies are required by state law to maintain reserves for their liabilities under life insurance policies. These reserves appear as liabilities on the balance sheets filed annually by such companies with state regulators. The oldest method of computing reserves is the "net level method."

The net level method produces a "net premium" that remains constant over the life of the policy. The net premium is the portion of the "gross premium"—the premium paid by the policy holder—that must be set aside in the reserve. Expenses incurred in the first year of the policy are ordinarily far greater than expenses in subsequent years, including, for example, higher first year commissions and expenses related to medical examinations to name a few. Typically, those expenses exceed the difference between the gross premium and the net premium. In such cases the insurer must draw from a source of funds other than the gross premium, such as its surplus, to pay those expenses. Thus, the net level method imposes a hardship on new or fast-growing insurers, since such insurers may only have a small amount of available surplus to cover excess expenses.

In order to address this hardship, the "preliminary term method" was developed and adopted by some life insurance companies. In general, under the preliminary term method a portion of what would otherwise have been the first year reserve (or the net premium) is made available to cover first year expenses, relieving the insurer of the necessity of resorting to its surplus for payment of first year expenses. In order to ensure solvency, however, state law valuation standards were established to ensure that the company's reserves did not fall below certain minimum levels.

Congress ultimately incorporated the concept of the preliminary term method into the federal tax laws by adopting section 818(c) of the Internal Revenue Code. Section 818(c) was enacted to permit insurers using a preliminary term method to revalue (and thereby increase) their life insurance reserves either on an exact basis or on an approximate basis, and thus avoid the hardships often encountered in the first year.[1]

█ On these cross-motions for partial summary judgement, the Court must construe the meaning of the terms "preliminary term basis" and "other than term insurance" under section 818(c) of the Internal Revenue Code of 1954 ("Code" or "§ 818(c)"). Under § 818(c), life insurance reserves computed on a preliminary term basis [2] may be increased for federal income tax purposes at the election of the insurer. A smaller increase is permitted for term insurance than for "other than term insurance." *See* § 818(c)(2)(A) and (B).

. With respect to the Plaintiff Western–Southern Life Assurance Company ("West-

ern"), the issues before the Court are (a) whether Western computed its reserves on a preliminary term basis, and if so (b) whether the policies provided "term insurance" or whether they were "other than term insurance" and thus eligible for the larger increase under § 818(c)(2)(A). With respect to the Plaintiff Columbus Mutual ("Columbus"), the only issue before the Court is whether Columbus's reserves were eligible for the larger "other than term insurance" revaluation.

The Defendant claims the question of whether Western computed its reserves on a preliminary term basis, and whether both Western and Columbus were eligible for the larger revaluation for "other than term insurance" are questions of fact not appropriately resolved on a motion for summary judgement. The Defendant also contends in its motion for partial summary judgement, that because the Plaintiffs represented their plan to state regulatory agencies as a "paid-up" policy and not as a premium paying policy, they are precluded from revaluation under § 818.

The Plaintiffs contend that both the definition of "preliminary term basis" and the issue of eligibility under the "other than term insurance" clause are questions of law appropriately resolved on these motions. Similarly, the Plaintiffs claim that Western clearly computed its reserves using a preliminary term method, and that the reserves of both Western and Columbus were eligible for the larger revaluation for "other than term insurance."

The Plaintiffs finally contend that regardless of whether the Defendant claims that the

---

1. Section 818(c) provides:
   *Life Insurance Reserves Computed on Preliminary term Basis.* For purposes of this part ... at the election of the taxpayer the amount taken into account as life insurance reserves with respect to contracts for which such reserves are computed on a preliminary term basis may be determined on either of the following bases:
   (1) *Exact revaluation.* As if the reserves for all such contracts had been computed on a net level premium basis (using the same mortality assumptions and interest rates for both preliminary term basis and the net level premium basis).

(2) *Approximate revaluation.* The amount computed without regard to this subsection—
   (A) increased by $19 per $1,000 of insurance in force (other than term insurance) under such contracts, less 1.9 percent of reserves under such contracts, and
   (B) increased by $5 per $1,000 of term insurance in force under such contracts which at time of insurance cover a period of more than 15 years, less .05 percent of reserves under such contract.

2. As the parties agree, the term "preliminary term *basis*" is synonymous with the term "preliminary term *method*."

Plaintiffs characterized their policies as "paid-up" policies to state regulators, the determinative factor under § 818 is how the Plaintiffs *actually* computed their reserves. Thus, as there is no genuine dispute as to whether the Plaintiffs actually computed their reserves using the preliminary term method, they claim, they are entitled to summary judgement as a matter of law, and the Defendant's motion should be denied.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgement as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). ▪ The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2552; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Guarino,* 980 F.2d at 405.

▪ As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" *Guarino,* 980 F.2d at 405 (quoting *Inter–Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## ANALYSIS

### I

▪ With respect to the first issue that the Court must resolve, the Plaintiffs claim that there are three necessary criteria a given method must possess in order to qualify as a preliminary term method, and that the method used by the Plaintiffs met those requirements. According to the Plaintiffs, preliminary term methods have the following defining characteristics: (1) the net valuation premium for the first policy year must be less than under the net level method; (2) the net premium for renewal years must be greater than under the net level method; and (3) at the time of issuance of the policy the present value of such first and renewal net premiums equals the present value of the first and renewal net premiums as computed under the net level method.

Although nowhere does the Defendant dispute that the Plaintiffs' method meets the above three criteria, it claims that the definition of "preliminary term method" includes two additional requirements; first, according to the Defendant, a preliminary term method must meet the "decisional rule" requirement, second, it must meet the "zero terminal reserve" requirement. Furthermore, the Defendant claims that the definition of the term "preliminary term method" is an issue of fact

not appropriately resolved on a motion for summary judgement. We disagree.

First, we have reviewed the authorities cited by the Plaintiffs and conclude that they support the Plaintiffs' definition of "preliminary term method." *See Oxford Life Ins. Co. v. United States,* 790 F.2d 1370, 1376 (9th Cir.1986); *Security Ben. Life Ins. Co. v. United States,* 726 F.2d 1491, 1496 (10th Cir.1984); *United Fire Ins. Co. v. C.I.R.,* 768 F.2d 164, 166 n. 3 (7th Cir.1985); *Reserve Life Ins. Co. v. United States,* 640 F.2d 368, 369, 226 Ct.Cl. 169 (1981); *USAA v. Commissioner,* 94 T.C. 499, 505, 1990 WL 32263 (1990) (describing the defining characteristics of preliminary term method) *rev'd on other grounds and remanded,* 937 F.2d 606, 91–2 U.S.T.C. 89,282 (5th Cir.1991); *Am. Gen. Life Ins. Co. v. United States,* 90–1 T.C. 50,010, 1989 WL 165583 (M.D.Tenn.1989); *Sec. Ben. Life Ins. Co. v. United States,* 517 F.Supp. 740, 747 (D.Kan.1980), *aff'd* 726 F.2d 1491 (10th Cir.1984); H.Rep. No. 2333, 77th Cong., 2d Sess. 109–10 (1942); S.Rep. No. 291, 86th Cong., 1st Sess. 30–31 (1959); H.R.Rep. No. 34, 86th Cong., 1st Sess. 17–18 (1959) U.S.Code Cong. & Admin.News 1959, p. 1575. Furthermore, we are not persuaded by the Defendant's assertion that there are additional criteria—which the Plaintiffs' method does not meet—including the "decisional rule" and "zero terminal reserve" requirements.

■ As the Plaintiffs have pointed out, several types of preliminary term methods recognized by Congress and the Internal Revenue Service, such as the "full preliminary term method", and the "select" and "ultimate" preliminary term methods, *See* H.Rep. No. 2333, 77th Cong., 2d Sess. 109–10 (1942); S.Rep. No. 1631, 77th Cong., 2d Sess. 145 (1942); United States Treasury Income Tax regulation No. 111 § 29.201–6 (1941); *Nat. States Ins. Co. v. Commissioner,* 81 T.C. 325, 1983 WL 14869 (1983) (quoting legislative history), *aff'd,* 758 F.2d 1277 (8th Cir.1985), do not meet the Defendant's two additional "requirements." Consequently, as there exist recognized preliminary term methods which do not meet the Defendant's additional criteria, those criteria cannot be essential elements of the preliminary term method.

Therefore, as we conclude that the Defendant's additional elements are not necessary criteria, and because the Defendant has not disputed that the Plaintiffs have met the three established criteria,[3] we conclude that there exists no genuine dispute as to any material fact. Thus, in light of the case law, and the undisputed facts before the Court, we conclude that summary judgement in favor of the Plaintiffs is warranted in this case.

The Defendant also argues that because the Plaintiffs characterized their policies as "paid-up policies" in forms submitted to state regulators, the Plaintiff, Western, is precluded from revaluation under § 818. We disagree.

■ The Fifth Circuit observed that "in order to gain the § 818(c) deduction, an insurer must *actually* calculate its reserves on a preliminary term basis." *USAA v. Commissioner,* 937 F.2d 606, 91–2 U.S.T.C. 89,-282, 89,285 (5th Cir.1991) (emphasis in original). Thus, "the § 818 deduction hinges upon how the insurer *actually* calculated its insurance reserves," *id.,* not how the insurer may have characterized it. This rule is consistent with "the established tax principle that a transaction is to be given its effect in accord with what actually occurred and not in a accord with what might have occurred." *Commissioner v. Nat. Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974). As discussed above, we conclude that there is no genuine issue of material fact as to whether the Plaintiffs have met the three necessary criteria qualifying the method they actually used as a preliminary term method. Thus, we find the Defendant is not entitled to summary judgment in its favor based on its assertion that the Plaintiffs characterized theirs as a "paid-up" policy.

---

**3.** In fact testimony of at least one of the Defendant's own witnesses affirmatively supports the Plaintiffs' assertion that they have met the three requisite criteria. See Exhibit Q, attached to Document 26, at 125–6, 128.

## II

Having determined that the Plaintiffs have applied a preliminary term method under § 818, we must determine whether Western and Columbus's policies represented "term insurance" and therefore qualified for the smaller increase, or if they were "other than term" insurance and qualified for the greater increase. As discussed below, we conclude that the policies were not "term insurance" policies, and thus the Plaintiffs are entitled to the increase they seek.

 Term insurance is insurance which is effective for a specific period of time, at the expiration of which the insurance automatically expires, and which has no loan or cash value except in the event of the death of the insured prior to the expiration of the contract. *See* John A. Appleman, Insurance Law & Practice, § 3 (1981) [hereinafter "Appleman"]; *Cyrak v. Poyner*, 80 B.R. 75, 80 n. 10 (N.D.Tex.1987). Thus, unless a term policy is renewed upon the expiration of the term for which the premium has been paid, the insurer's liability ends at that time. Appleman, § 111. Consequently, a life insurance policy which does not expire at the end of a specified term, but which continues for the life of the insured so long as premiums are paid, and which has loan or cash value, is not "term insurance." Such insurance, therefore, must be considered "other than term insurance" for purposes of § 818. *See Id*, §§ 2, 3; *Cyrak*, 80 B.R. at 80 n. 10; *Doty v. American Nat. Ins. Co.*, 165 S.W.2d 862, 869 (Mo.1942).

In this case, under the plain language of the insurance contracts the policies are not limited to any specific term. Furthermore, by their very language the policies unambiguously yield a cash and loan value, the cash value on the maturity date being equal to the death benefit. Thus, as these terms do not limit the policy to a specific term, and furthermore, are designed to accumulate cash and loan value, the policies are not term insurance policies. As such, they qualify for the larger increase available under § 818(c)(2)(A) for "other than term insurance."

## CONCLUSION

Accordingly, for the forgoing reasons, we hereby GRANT the Plaintiffs' Motion for Partial Summary Judgment, and DENY the Defendant's Motion for Partial Summary Judgment. Furthermore, the Court hereby schedules a status and scheduling conference for January 31, 1994, at 9:00 A.M. to discuss any issues that may remain including the issue of damages.

SO ORDERED.